**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

---

JOHN FINCH,
                Plaintiff,

v.                                     No. 06-CV-1448
                                        (TJM/DRH)

SERVELLO, Correction Officer, Oneida
County Jail; and McLEAR, Correction
Officer, Oneida County Jail,
                Defendants.

---

**APPEARANCES:**                     **OF COUNSEL:**

JOHN FINCH
Plaintiff Pro Se
06-B-2948
Attica Correctional Facility
Post Office Box 149
Attica, New York 14011

GORMAN, WASZKIEWICZ,         BARTLE J. GORMAN, ESQ.
  GORMAN & SCHMITT
Attorney for Defendants
1508 Genesee Street
Utica, New York 13502

**DAVID R. HOMER
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se John Finch ("Finch") is an inmate currently in the custody of the New York State Department of Correctional Services ("DOCS") and was formerly incarcerated in the Oneida County Jail "(Oneida"). He brings this action pursuant to 42 U.S.C. § 1983 alleging that defendants, two Oneida corrections officers, violated his constitutional rights

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

under the Eighth Amendment. Compl. (Docket No. 1). Presently pending is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 16. Finch opposes the motion. Docket No. 23. For the following reasons, it is recommended that defendants' motion be denied.

## I. Background

The facts are related herein in the light most favorable to Finch as the non-moving party. See subsection II(A) infra.

At all relevant times, Finch was incarcerated at Oneida. Compl. On October 27, 2006, defendants Servello and McLear transported Finch to Oneida County Court for sentencing. Id. 5; Servello Aff. (Docket No. 16-3) ¶ 2; McLear Aff. (Docket No. 16-4) ¶ 2. After sentence was imposed, the judge called the next case, Finch turned to speak with his attorney. Servello interrupted the conversation to remove Finch from the courtroom, placed his hand on Finch's back, and led Finch from the courtroom. Compl. 5; Servello Aff. ¶ 2.[2]

Defendants assert that once out of the courtroom, Finch allegedly became agitated and verbally abusive to Servello. Servello Aff. ¶ 3; McLear Aff. ¶ 3. Servello and McLear sent the other inmates from the courthouse and waited for a second elevator for Finch. Compl. 5; Servello Aff. ¶ 3. Upon entering the elevator, defendants restrained Finch and then slammed him against the elevator walls and rails. Compl. 5.[3] Upon exiting the elevator at

---

[2]Finch contends that the escort was more forceful, with Servello "grabb[ing his] arm, and . . . pulling [him] out of the courtroom." Compl. at 5.

[3]Defendants state that Finch was restrained only after he attempted to head-butt Servello while Finch contends that defendants "started slamming [him] against the elevator wall very hard . . . pushing and pulling on [him] . . . hard enough [to] . . . f[all] and .

2

the holding cell, Finch reported the assault to another corrections officer and Servello and McLear ceased their abuse. Compl. at 5-6.

The three men returned to Oneida and McLear escorted Finch to his cell. During the escort, McLear verbally abused Finch and "got mad and pushed [Finch] into the unit, and then he turned around and grabbed [Finch] by the throat, and choked [him] . . . leaving marks on [his] neck . . . ." Compl. 6.[4] McLear slammed Finch into a wall, striking the back of Finch's head forcefully on the wall, and then dragging him back to his cell by his jumpsuit. Id. Finch was handcuffed and unable to defend himself during the entire exchange. Id.; Docket No. 23; see also Liddy Aff. (Docket No. 16-6) ¶¶ 3, 5.

Finch was then taken to medical unit where medical personnel noted only minor abrasions and red marks on his face and neck, minimal swelling, and abrasions on his left shoulder and right ankle.[5] Stock Aff. (Docket No. 16-5) ¶ 4; Docket No. 16-5, Ex. A at 5; Compl. 7. A few days later, Finch requested treatment for pain in his jaw and wrist. Stock

---

. . smash[ his] face off of the handrail in the elevator causing scrapes and swelling on [his] left cheek." Compl. 5; Servello Aff. ¶¶ 3-5; McLear Aff. ¶¶ 3-5; Docket Nos. 16-3 & 16-4, Ex. B.

[4]McLear asserts that Finch attempted to stop to talk to a mental health worker in the hall in violation of Oneida's policies and procedures. McLear Aff. ¶ 6; Docket No. 16-4, Ex. B at 12. McLear contends that after ordering Finch to continue moving to his cell, Finch became verbally aggressive and "swung around with a closed right hand fist in an attempt to hit [him]." Id. ¶ 6; Docket No. 16-4, Ex. B at 12. After Finch swung at McLear, McLear "grabbed [Finch] by the front of the jump suit and placed him against the wall . . . [and Finch] was then moved to [the unit] without further incident." Id. ¶ 6; Docket No. 16-4, Ex. B at 12. Finch denies stopping to talk to the mental health worker. Compl. 6.

[5] The day prior to the altercation with defendants, Finch was involved in another altercation with an inmate were the other inmate punched Finch multiple times. Liddy Aff. (Docket No. 16-6 at 1-2) ¶ 3; Docket No. 16-6, ex. A at 4. Apparently, Finch "sustained injury but refused medical treatment." Liddy Aff. ¶ 4; Docket No. 16-6, ex. A at 5.

3

Aff. ¶ 5; Docket No. 16-5, Ex. A at 7.  On November 1, 2006, Finch was examined by the medical department, no bruising was noted, but his grip strength was decreased and he was given Tylenol for pain.  Stock Aff. ¶ 5-6; Docket No. 16-5, ex. A at 8.

After the altercation, Finch "wrote out grievance forms . . . but like everything else here at the jail, they've disappeared." Compl. 7.  Finch asked his housing officer to write a letter that Finch did in fact submit grievances.  Id.  However, that letter has not been produced.  Facility records do not reflect the filing of any grievances.  Heim Aff. (Docket No. 16-7) ¶ 4.  This action followed.

## II.  Discussion

In his complaint, Finch alleges that defendants violated his Eighth Amendment rights by using excessive force during his transport from the courthouse to his cell. Defendants move for summary judgment on all claims asserting that (1) Finch did not properly exhaust his administrative remedies, (2) Finch has failed sufficiently to allege an Eighth Amendment claim, and (3) defendants are entitled to qualified immunity.

### A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v.

Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, __ F.3d __, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

**B. Exhaustion**

As a threshold matter, defendants contend that Finch has failed to exhaust his administrative remedies. Under 42 U.S.C. § 1997e(a), an inmate must exhaust all administrative remedies prior to bringing any suit challenging prison conditions, including federal civil rights cases. Porter v. Nussle, 534 U.S. 516, 524 (2002); see also Woodford v. Ngo, 126 S. Ct. 2378, 2382-83 (2006). This exhaustion requirement applies to all prison condition claims. Porter, 534 U.S. at 532. "[A]ny deprivation that does not affect the fact or duration of a prisoner's overall confinement is necessarily a condition of that confinement." Jenkins v. Haubert, 179 F.3d 19, 28 (2d Cir. 1999). The exhaustion requirement also applies even if the administrative grievance process does not provide for all the relief requested by the inmate. Nussle, 534 U.S. at 524.

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (citing Giano v. Goord, 380 F.3d 670, 677 (2d Cir. 2004)). Exhaustion is generally achieved through the Inmate Grievance Program (IGP).[6] See N.Y.Comp. Codes R. & Regs. tit. 7, § 701.1 et seq. (2007). However, when an inmate fails to follow the IGP, a court must conduct a three-part inquiry to determine if such failure is fatal to claims. A court must consider whether

(1) administrative remedies are not available to the prisoner; (2) defendants

---

[6] "The IGP is a three-step process that requires an inmate to: (1) file a grievance with the IGRC [Inmate Grievance Resolution Committee]; (2) appeal to the superintendent within four working days of receiving the IGRC's written response, and (3) appeal to the CORC [Central Office Review Committee] . . . within four working days of receipt of the superintendent's written response." Abney v. McGinnis, 380 F.3d 663, 668 (2d Cir. 2004) (internal citations omitted).

6

> have either waived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement.

Ruggiero, 467 F.3d at 175 (citing Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004)).

Administrative remedies are unavailable when there is no "possibility of [] relief for the action complained of." Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004) (citing Booth v. Churner, 532 U.S. 731, 738 (2001)). The test to determine the availability of an administrative remedy is an objective one asking whether "a similarly situated individual of ordinary firmness" would have deemed it accessible. Id. at 688. Courts have found unavailability "where plaintiff is unaware of the grievance procedures or did not understand it or where defendants' behavior prevents plaintiff from seeking administrative remedies." Hargrove v. Riley, No. CV-04-4587 (DST), 2007 WL 389003, at *8 (E.D.N.Y. 2007) (internal citations omitted).

Finch failed to exhaust his administrative remedies as no evidence exists that any grievances were filed concerning the physical abuse he allegedly sustained. The grievance procedure was freely available to Finch and he was fully aware of its components as he alleges that he attempted to file a grievance. Compl. 7; Docket No. 23.  Thus, Finch was familiar with the system. However, liberally construing Finch's claims, he alleges that he found the IGP futile because he had filed multiple grievances that were never directed to the appropriate persons or places and attempted to address that futility by having his housing officer send a letter confirming his attempt. Compl. at 7; Docket No. 23. Finch has produced no other evidence to substantiate his testimony. There are no copies of grievances that he attempted to mail or any other evidence from which to conclude that

Finch actually submitted the documents in question.

Nevertheless, although implausible, Finch's testimony on this issue requires a determination of credibility, a determination that cannot be made on a motion for summary judgment.  See Dillon v. Morano, 497 F.3d 247, 254 (2d Cir. 2007); Reeves v. Johnson Controls World Servs., Inc., 140 F.3d 144, 157 (2d Cir. 1998) ("To the extent that these inconsistencies can only be resolved based upon credibility determinations, such questions of witness credibility are to be decided by the jury."); United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994) ("Resolutions of credibility conflicts and choices between conflicting versions of the facts are matters for the jury, not for the court on summary judgment.").

Accordingly, defendants' motion should be denied on this ground.

### B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. CONST. amend. VIII.  The Supreme Court has established that inmates enjoy Eighth Amendment protection against the use of excessive force and may recover damages for its violation under 42 U.S.C. § 1983.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth

Amendment protection." Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262. However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (citations omitted). "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." Id. at 21 (citation omitted). The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Id. (quoting Hudson, 503 U.S. at 7). In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response." Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotations and citations omitted).

In this case, it appears that Finch alleges that both officers forcibly shoved him and caused him to fall and strike resulting in lacerations and swelling on his face and neck and lacerations to his ankle and shoulder. These claims suffice to state a serious injury. Any of

9

these injuries in isolation would be insufficient to constitute a severe injury, but taken together, they suffice to satisfy the objective prong of the Eighth Amendment inquiry.  See Hudson, 503 U.S. at 10 (holding that "blows . . . which caused bruises, swelling, loosened teeth, and a cracked dental plate, are not *de minimus* for Eighth Amendment purposes.") Yearwood v. LoPiccolo, No. 95-CV-2544 (DC), 1998 WL 474073, at *7 (S.D.N.Y. Aug. 10, 1998) (holding that a minor bump and self-inflicted injuries are insufficient to state a serious injury as opposed to hypothetically suffering from other "marks, bruises, excess swelling, or edema . . . ."); Shabazz v. Pico, 994 F. Supp. 460, 471 (S.D.N.Y. 1998) (holding that kicking an inmate's feet apart during a pat-frisk search, while not condoned, is not excessive force); Gabai v. Jacoby, 800 F. Supp. 1149, 1155 (shoving an inmate into a chair resulting in a bruise is insufficient to state an Eighth Amendment violation).

Generally, the inability to establish the objective prong of the analysis subjects a claim to dismissal. Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  However, even if Finch has failed to prove a serious injury, his allegations also raise a question of fact as to whether defendants' conduct was undertaken with malice for the very purpose of causing harm to Finch.  See Grifin v. Crippen, 193 F.3d 89, 91 (2d Cir. 1999) ("the malicious use of force to cause harm constitutes an 'Eighth Amendment violation[ ] *per se* . . . whether or not significant injury is evident.' (quoting Blyden, 186 F.3d at 262)); Odom v. Dixion, No. 04-CV-889F, 2008 WL 466255, at *17 (W.D.N.Y. Feb. 15, 2008).   Therefore, Finch's failure to meet this element of his claim does not alone mandate dismissal and the subjective prong must also be considered.

As to that prong, Finch asserts first that defendants waited until they were alone with Finch in an elevator and then took that opportunity to assault him without provocation or

10

justification. According to Finch, when the elevator doors opened, defendants ceased assaulting him. Additionally, McLear's verbal harassment and then choking him, slamming him against the wall, and dragging him back to his cell, all while Finch was in hand cuffs and unable to defend himself, could reasonably be found repugnant to society's standards. If credited, these assertions suffice to raise a question of fact whether defendants acted with malice for the very purpose of causing harm to Finch rather than good faith or concerns for restoring discipline or maintaining institutional safety. As both Servello and McLear have alleged a completely opposing account of the events on October 27, there exists a genuine issue of material fact as to what actually transpired.

Accordingly, defendants' motion on this ground should be denied.

### D. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects government officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d

364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001).  Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.  As discussed supra, questions of fact have been raised as to Finch's claims and, therefore, the further inquiry must be conducted.

There is no question that it was well settled on October 27, 2006 that the Eighth Amendment prohibited a corrections officer from assaulting or intentionally inflicting harm on an inmate as Finch alleges was done by Servello and McLear.  See, e.g., Hudson, 503 U.S. at 9-10.  Therefore, the law on the issue was clearly established on that date and both defendants reasonably were or should have been aware of its prohibitions.

Accordingly, it is recommended that defendants' motion on this ground be denied.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No.16) be **DENIED** in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892

F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: September 9, 2008
       Albany, New York

*David R. Homer*
United States Magistrate Judge